R. E. NICHOLSON v. R. W. CAMPBELL ET AL.

Delivered January 23, 1897.

**1. Injunction—Harmless Error.**

Where, in an action for an injunction, the court, upon a trial on the merits, properly refuses to perpetuate the injunction, error in its action in having refused to dissolve a temporary injunction because of plaintiff's failure to give bond, becomes immaterial.

**2. Dedication of Street—Easement—Guardian's Sale of Land.**

The rule that where the owner of land has it platted into lots, blocks and streets, and sells a lot with reference to such streets and plat thereof, the purchaser acquires an easement in the streets, applies to the like sale by a guardian under order of court of a lot owned by his minor ward.

**3. Judgment Binds Only Parties Thereto.**

A judgment wherein the owner of certain land claimed by a city to be a street, recovered it from the city, is not conclusive against the claim of an abutting lot owner to a street easement therein, where such lot owner was not a party to the suit against the city.

APPEAL from Hunt. Tried below before Hon. E. W. TERHUNE.

*J. S. Sherrill* and *John F. Nicholson*, for appellant.—1. A judgment perpetuating an injunction on a condition expressed that a sufficient bond should thereafter be executed, is not law. Downs v. Monroe, 42 Texas, 307.

2. Judgment against a municipality concludes the citizens thereof, individually. 31 Kan., 729, 727; 53 Iowa, 496; Bigelow on Estoppel (4 ed.), 129, note 8; 11 S. W. Rep., 1054; 57 Texas, 62; 77 Texas, 603; 74 Texas, 86.

*Craddock & Looney*, for appellees.

RAINEY, ASSOCIATE JUSTICE.— *Conclusions of Fact.*—The conclusions of fact of the court below we find to be supported by the evidence, and the same are adopted as the conclusions of this court; except that part of section 8 which finds that appellees paid more for said lots than they would otherwise have done, because they were corner lots. There is no evidence on this point, and we make no finding thereon.

The findings of the court below, as changed, are as follows:

"1. In 1875, Greenville was a town incorporated under special charter, and B. D. Martin was mayor. The council adopted an official map, which, as to the property in controversy, is as follows:

(See page following for plat.)

LEE STREET.

KING STREET.    UNION STREET.    WESLEY STREET.

| 1 | 2 | 3 | 4 | 5 |     | 1 | 2 | 3 | 4 | 5 | 6 |
| 10 | 9 | 8 | 7 | 6 |    | 7 | 8 | 9 | 10 | 11 | 12 |

WASHINGTON STREET.

When this map was made the streets were open and surveyed and marked on the ground, and were used as public highways, but King street had not been sufficiently dedicated and accepted to make it a public street.

"2.   Austin Horton, at his death in 1873, owned the property covered by Union street, Block 90, and a strip $15\frac{8}{10}$ feet wide, a part of and on the east side of King street, which was inherited by his son James Horton, who became of age in 1893, and the mother, Missouri Horton, was appointed and qualified guardian of his person and estate in the probate court of Hunt County.  Austin Horton died intestate, and his estate was never administered upon.

"3.   Missouri Horton, as guardian, made legal application to the proper court in 1881, to sell all the above property belonging to said minor, and the court made a legal order March, 1881, ordering the sale of all such property.  The field notes included the strip $15\frac{8}{10}$ feet wide in King street.

"4.   Said guardian under such order made sales and reported same to the proper court in due form, reporting sales as follows:  To A. Cameron; beginning at the northwest corner of the land sold by A. S. Marshall to A. Cameron; Thence west $24\frac{6}{10}$ feet to Union street; Thence south, etc., * * * to beginning.  Also another tract described thus:  Beginning at the northeast corner of block 90, as shown by the map adopted when D. B. Martin was mayor; * * * Thence west $60\frac{6}{10}$ feet; Thence south 108 feet; Thence east $60\frac{6}{10}$ feet, continuing east 90 feet, including Union street, etc., * * * to beginning; the said Cameron agreeing to donate Union street to the city of Greenville. To M. T. McClellan the lot described as follows:  Beginning at the northwest corner of Block 90, as aforesaid; Thence east $60\frac{6}{10}$ feet; Thence south 108 feet; Thence west $60\frac{6}{10}$ feet, * * * etc., to beginning.  The report reported sale of other property not material

herein, but referred to Lee street and the corporation map of Greenville, and Block 89.

"5. At the December term of the probate court a valid order was made confirming the above sales, ordering the guardian to make deeds, which she did, conveying the land as described in the report of sale.

"6. The guardian afterward legally sold all the remainder of the property, except the strip $15\frac{8}{10}$ feet wide which was in King street.

"7. In 1891, James Horton, then a minor, sued the city of Greenville in trespass to try title to recover Union street and the strip $15\frac{6}{10}$ feet in King street, and recovered the strip in King street by valid judgment of this court, which judgment is still in force. Neither Looney nor Campbell were parties to that suit, but both knew it was pending.

"8. Plaintiffs Campbell and Looney own lots 1 and 2 in block 90, having purchased same before James Horton filed his suit against the city. They hold under a regular chain of title from M. T. McClellan * * *."

"9. James Horton, after he became of age, conveyed the strip $15\frac{8}{10}$ feet wide in King street to defendant R. E. Nicholson, and she was preparing to build on same and had placed posts in the ground for that purpose when this suit was filed. If defendant is not enjoined, she will improve the strip, which will cut plaintiff off from the street on the west and diminish the value and rental value of their property.

"10. Lee street is one of the main business streets of the city, and is built up west of King street and east of plaintiff's lot with business houses.

"11. Greenville became an incorporated city under the general laws in 1880, and adopted the map in 1875 as the official map of the city, and the lots, blocks and streets exist and are numbered now as in 1875. King street was opened and worked and recognized as a public street of the city before Campbell and Looney bought, and has been ever since. It was open as a street and mapped and recognized and worked as such in 1881, when the adjacent property was sold by the guardian."

In addition to the findings of the court below, we find that at the death of Austin Horton the property was not laid off into streets and blocks, as shown by said plat, but was described by metes and bounds. That in the guardian's application to sell said property, it was described by metes and bounds, which embraced all of it. That in the order of the court ordering the sale to be made the description of the property corresponded with that in said application; that all of said property except the strip in controversy was sold by said guardian according to said D. B. Martin's plat, and with reference to the divisions, streets, etc., as therein set forth; that the sales were reported to the court as made, and the sales thereof duly confirmed.

*Conclusions of Law.*—Appellant makes several objections to the proceedings in regard to the temporary injunction, but it is not necessary

for us to discuss these matters, as they become immaterial after the trial of the cause upon the merits.

The main question is, did the sale of the property by the guardian in the manner shown by the evidence, and the confirmation thereof by the court, create an easement on said strip of land in favor of appellees herein? We think so. It is well settled that where the owner of land sell lots according to a map or plat, which shows that said land is laid off with reference to streets, squares, etc., the purchasers of said lots acquire, as appurtenances thereto, "all such rights, privileges and easements and servitudes represented by such map as belonged to the owner;" and the owner has no right to appropriate such street to a use inconsistent with that represented by the map, on the faith of which said lots were sold. For a discussion of these principles, see Bond v. Texas & Pacific Railway Company, ante p. 281.

The property having been sold with reference to the divisions as shown by the map designated evidently induced parties to buy and materially conduced to a quicker sale and better price than otherwise. If the land of a minor can be sold to a better advantage by dividing it up into lots with streets, etc., we see no good reason why it should not be done, and when done, the same rule as to the easement, servitudes, etc., will apply in the same manner as where sold directly by the owner.

The guardian having sold the land with reference to the map in evidence, and the court having approved sales thereof, the strip in controversy became an appurtenant to the lots owned by appellees, and as the attempted appropriation of said strip by appellant is inconsistent with the rights of appellees' use to same as an appurtenant to said lots as represented by said map, the appellees were entitled to a writ of injunction restraining appellant from exercising exclusive use and dominion over same.

Appellees were not barred by the recovery of James Horton, appellant's vendor, against the city of Greenville, for the reason that appellees were not parties to that litigation. That litigation settled the rights of the city of Greenville and the public to the use of that strip as a public street, and it in no way affected appellees' right to the same as an appurtenant to said lots.

The judgment of the court below is affirmed.                    *Affirmed.*

### ON REHEARING.

RAINEY, ASSOCIATE JUSTICE.—Appellant in his motion for rehearing insists that this court erred in holding that the irregularities in granting the temporary writ of injunction did not affect the action of the court in granting an injunction on the trial on the merits, and contends that there was no bond given as required by law and as required by the trial judge as a condition precedent to the issuance of the temporary writ of injunction, and for that reason that the court below

erred in granting a perpetual injunction without the execution of bond; and asks for our conclusions as to the state of the record on this question, which we here give:

On November 16, 1895, appellees presented their application for injunction to the trial judge in vacation, who made an order temporarily restraining the defendant from fencing the lot until the further order of the court upon the application, which was set down for hearing on December 2, 1895. It seems no hearing was had until December 13, 1895, at which time the judge set aside his restraining order theretofore made, and entered an order granting the injunction as prayed for, conditioned that the applicants give bond as required by law in the sum of $1000.

On January 6, 1896, defendant filed his motion to dissolve the writ of injunction, one of the grounds, among others, being that the applicants had not executed bond as required by law. The motion to dissolve was overruled.

There is no bond or writ of injunction in the record; nor is there any evidence to show that such bond was not executed, or that the writ of injunction was issued, except the motion to dissolve and the action of the court overruling it. This is not enough to show that no bond was executed; and in the absence of proof that there was no bond executed, the presumption will be in favor of the judgment of the court below overruling the motion to dissolve the injunction. In the absence of something in the record to show the contrary, the law always presumes in favor of the judgment of the court. If, however, no bond was executed, the temporary injunction was improperly issued and should have been dissolved on motion; but the error, if it was such, in refusing to dissolve, does not in any way affect the injunction granted on the trial on the merits. The judgment of the court on final hearing is a general judgment for the appellees, granting a perpetual injunction against the appellant, and in no way refers to the temporary injunction theretofore granted. In order to grant relief on the merits of the case, it is not a prerequisite that the temporary injunction should have theretofore been granted. In granting a temporary injunction, a bond is required in order that the parties will be secured in such damages as they may be adjudged to have sustained on the trial on the merits of the case. On the trial, if the applicant is shown to be entitled to a perpetual injunction, such relief is granted without bond being required.

The appellant relies upon Downs v. Monroe, 46 Texas, 307. We do not think that case contravenes the doctrine we have just announced. It is true, that case holds that it was wrong to issue the writ of injunction without giving bond; but as we understand that case, it was reversed and dismissed because the petition of the applicant showed upon its face that he was not entitled to the relief sought. In the case under consideration, the plaintiffs were entitled to an injunction on the trial

on the merits, regardless of what the proceedings had been prior thereto.

The motion for rehearing is overruled.                    *Overruled.*

Writ of error refused.